**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PATRICIA GILL, | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO.  5:17-CV-00003-DAE |
| | § | JURY TRIAL REQUESTED |
| DIRTT ENVIRONMENTAL | § | |
| SOLUTIONS, INC., | § | |
| Defendant, | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF**

**TO THE HONORABLE JUDGE PRESIDING:**

COMES NOW Plaintiff, PATRICIA GILL ("Gill"), and files her Response to Defendant's

Motion for Summary Judgment.

**Katzman & Katzman, PLLC**
**A T T O R N E Y S  A T  L A W**

21022 Gathering Oak
San Antonio, Texas 78260
(210) 979-7300
(210) 979-7357 FAX
alex@katzmanandkatzman.com
jason@katzmanandkatzman.com

_/s/ Alex Katzman_____
ALEX KATZMAN
Texas Bar No.:   00786939
JASON LINNSTAEDTER
Texas Bar No.:   24096521

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been delivered via ECF to the following counsel of record on this the 26th day of February, 2018:

**BELL NUNNALLY & MARTIN LLP**
Jay M. Wallace
SBN: 20769200
jwallace@bellnunnally.com
Kristopher D. Hill
SBN:
khill@bellnunnally.com
Saba F. Syed
SBN: 24088497
ssyed@bellnunnally.com
3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204-2429
Tel: (214) 740-1400
Fax: (214) 740-1499

-and-

**LANGLEY & BANACK**
Roger D. Kirstein
SBN: 11533700
rkirstein@langleybanack.com
Natalie F. Wilson
SBN: 24076779
nwilson@langleybanack.com
745 E. Mulberry Ave.. #900
San Antonio, Texas 78212
Tel: (210) 736-6600
Fax: (210) 735-6889

**ATTORNEYS FOR DEFENDANT**

_/s Jason Linnstaeder_____
ALEX KATZMAN
JASON LINNSTAEDTER

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

# TABLE OF CONTENTS

**I. INTRODUCTION** ............................................................................................6

**II. STATEMENT OF FACTS** ............................................................................6

III. ARGUMENT AND AUTHORITIES ..............................................................9

    A.  Applicable Legal Standards — Summary Judgment Standard ...................... 9

    B.   The Burden-Shifting Framework for Age Discrimination Claims............................ 10

    C. Refusal to follow Policies and Pretextual Nature of Reasons Given for Termination 11

    D.  DIRTT Investigation Policies ................................................................. 13

    E.  DIRTT Inaccurate EEOC Statements ...................................................... 15

    F.  Complaints Regarding Ms. Gill's Alleged Unprofessional Conduct ......................... 15

        a.Andrea Skinner Complaints .....................................................16

        b. Megan McCray Complaints .............................................................20

        c. Antoinette ("Toni") Pahl Complaints...........................................25

        d. Other Employee Complaints.........................................................28

        e. Scott Jenkins Complaints ...........................................................29

    G.  Legitimacy of DIRTT's Performance-Based, Non-Discretionary Reasons for
        Termination................................................................................ 29

    H. Age was the "But-For" Cause of Gill's Termination Under the ADEA.................... 30

    I. Age was "Motivating Factor" for the Termination of Gill's Employment ................. 31

V. CONCLUSION AND PRAYER ........................................................................32

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Allen v. Highlands Hosp. Corp.,* 545 F.3d 387 (6th Cir. 2008) ...............................................30, 31

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................................10

*Burrell v. Dr. Pepper/Seven Up Bottling Grp, Inc.*, 482 F.3d 408 (5th Cir. 2007) .....................12

*Burton v. Freesclae Semiconductor, Inc.*, 798 F.3d 222 (5th Cir. 2015) .....................................12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) .......................................................................9

*Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) .............................9, 10

*Dixon v. Grande Communs. Networks LLC,* No. MO-13-CV-085, 2015 U.S. Dist. LEXIS 2247 (W.D. Tex. 2015) ....................................................................................................................12, 21

*Haire v. Bd. of Supervisors of La. State Univ.,* 719 F.3d 356 (5th Cir. 2013).................11, 17, 30

*Ion v. Chevron*, 731 F.3d 379 (5th Cir. 2013) .......................................................................12, 31

*Jackson v. Cal-W Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010) ...................................10, 11, 30

*Jones v. R.G. Barry Corp.*, No. 16-cv-154 (RCL), 2017 U.S. Dist. LEXIS 39161 (W.D. Tex. 2017) ............................................................................................................................................31

*Kokes v. Angelina Coll.*, 148 S.W.3d 384 (Tex. App—Beaumont 2004, no pet.).........................31

*Medina v. Ramsey Steel Co.*, 238 F.3d 674 (5th Cir. 2001) ....................................................13, 31

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

*Miller v. Raytheon Co.,* 716 F.3d 138 (5th Cir. 2013)............................................................12, 31

*Montalvo v. Aerotek, Inc.*, No. 5:13-CV-997-DAE, 2014 WL 6680421 (W.D. Tex. 2014) ........11

*Nasti v. CIBA Specialty Chem. Corp.*, 492 F.3d 589 (5th Cir. 2007) ...........................................12

*Reed v. Neopost,* 701 F.3d 440 (5th Cir. 2012)............................................................................10

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ...............................................10

*Smith v. Xerox Corp.*, 371 Fed. Appx. 514 (5th Cir. 2010) ..............................................11, 14, 16

*Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224 (5th Cir.2015) .......................................................11

*Sw. Bell Tel. Co. v. Garza,* 58 S.W.3d 214 (Tex. App.—Corpus Christi 2001),
*aff'd in part, rev'd as to punitive damages,* 164 S.W.3d 607 (Tex. 2004) ......................11, 14-16

*Tyler v. Unocal Oil Co. of Cal.*, 304 F.3d 379 (5th Cir. 2002) ...........................11, 14-16, 18, 31

## **Statutes**

29 U.S.C. §621 ....................................................................................................................6

Tex. Labor Code §21.001 ....................................................................................................6

## **Rules**

FED. R. CIV. P. 56(c).............................................................................................................9

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

## I. INTRODUCTION

Defendant DIRTT, a supplier of office finish-out and furniture solutions, started operations in 2004, the same year that DIRTT hired Plaintiff Pat Gill to create and head up DIRTT's Government Sales program. In July of 2014, Defendant hired Toni Pahl to work alongside and eventually replace Ms. Gill. Plaintiff Gill, age fifty-nine (59) at the time of termination in October 2015, was replaced by the approximately ten (10) years younger Toni Pahl, age forty-eight (48).[1] Defendant created pretextual complaints concerning Ms. Gill's performance and alleged unwillingness to work with others within the company, and eventually terminated her. Ms. Gill was discriminated against based on her age when she was terminated on October 14, 2015 and replaced by the substantially younger Toni Pahl. Ms. Gill has filed suit under 29 U.S.C. §§621 *et seq.* ("ADEA"), and the Tex. Labor Code §21.001 *et seq.*

## II. STATEMENT OF FACTS

Ms. Gill began working for DIRTT as a Government Sales Director in 2005. Plaintiff's employer commended her hard work and diligence and earned the company multiple project rewards as well as internal praise for her diligent and professional work manner.[2] Upon hiring Ms. Gill, DIRTT's then CEO Mogens Smed informed Plaintiff that he wanted her to lead DIRTT to success in the previously unprofitable Government Market and gave Ms. Gill responsibility for all Government Sales and Government Contracts.[3] DIRTT was founded in 2004 and had no success in the government sector prior to hiring Plaintiff Gill. Plaintiff's extensive experience in handling

---

[1] Exhibit 1; Exhibit "2"

[2] Exhibit "3"; Exhibit "4" (81:07-82:18); Exhibit "5"; Exhibit "6"; Exhibit "7"; Exhibit "8"; Exhibit "9"; Exhibit "10"; Exhibit "11" ¶3; Exhibit "12" ¶3-7; Exhibit "13" ¶3.

[3] Exhibit "14" (12:03-12:15)

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

Government Contracts proved to be an invaluable asset to Defendant DIRTT.[4] DIRTT's then prevailing opinion that the Government sector was unprofitable was soon changed by Ms. Gill's success in the sector and proved to be the saving grace for the company in its formative years, providing a large measure of the company's revenues.

In or about August 2014, Defendant DIRTT hired Toni Pahl as a government specialist to assist Ms. Gill. It soon became apparent that the hiring of the much younger Ms. Pahl was part and parcel of the Defendant's plan to create pretextual reasons to terminate Ms. Gill. Scott Jenkins, then president of DIRTT, went so far as to take key territories (i.e. New York and Texas) away from Ms. Gill and give them to Ms. Pahl. Ms. Pahl's limited knowledge of the particular clients, and Government Contracts in general, coupled with DIRTT screening Ms. Gill from all communications regarding these territories, resulted in these contracts being put in jeopardy.[5]

Plaintiff Gill suffered disparate treatment from Defendant as she was held to a higher standard and treated less favorably than similarly-situated employees. Prior to the geographical split in territories, Defendant screened Plaintiff from the younger Toni Pahl's actions, despite Ms. Gill being in charge of government sales. Further evidencing Plaintiff being treated less favorably than her younger replacement, Defendant gave the younger Toni Pahl the more lucrative and better developed East territory.[6]

Ms. Gill treated her co-workers and everyone she dealt with at DIRTT with respect, she always endeavored to exhibit professionalism, and exhibited no conduct contrary to DIRTT culture.[7] Despite this, Defendant created pretextual reasons for terminating Ms. Gill. These reasons

---

[4] Exhibit "3"; Exhibit "4" (81:07-82:18); Exhibit "15"
[5] Exhibit "13" ¶5; Exhibit "16"; Exhibit "17"
[6] Exhibit "17"; Exhibit "2"
[7] Exhibit "3"; Exhibit "4" (72:09-72:25 and 81:07-82:18); Exhibit "11" ¶3; Exhibit "12" ¶3-7; Exhibit "13" ¶3;

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

included accusations of Ms. Gill's disinterest and disregard for company policies (without specifying which policies), lack of attention to detail (without specifying the details), alleged usurping of other sales representatives' clients, and for referring to sales representatives in a demeaning manner by using terms such as "sugar" and "honey".[8] DIRTT claims it based its termination decision on e-mails by several DIRTT employees, gathered after Plaintiff's termination, complaining of Ms. Gill's alleged dishonesty, self-interest, and disruptive behavior, among other things.[9] Despite DIRTT's policies, formal and informal, regarding investigation of complaints, DIRTT's upper-management team did not investigate any of the alleged complaints allegedly lodged against Ms. Gill.[10] When asked in deposition if Ms. Gill actually violated DIRTT's Code of Conduct and Values, one of DIRTT's stated reasons for termination, DIRTT's President/CEO and termination decision maker Scott Jenkins testified that he did not know.[11] Moreover, though DIRTT responded to interrogatories listing two decision-makers (President Scott Jenkins and CEO Mogens Smed), Smed testified that he left it to Jenkins to make the termination decision.[12] Meanwhile, HR Director Jason Robinson simply prepared the paperwork for the termination without any other involvement.[13]

Defendant claims to have fired Ms. Gill for cause, after ten (10) years of loyal service, but refused to provide Plaintiff any level of detail.[14] Yet at the time of termination Defendant offered Ms. Gill a termination without cause if she accepted a severance payment of $88,500.00 to release

---

[8] Exhibit "25" (pg. 2) Exhibit "18" (35:07-37:03, 37:04-43:06, 81:03-18, 97:09-12, 165:09-12, 165:18-166:04, 166:15-168:25, 169:01-170:05, 170:06-172:03, 177:14-180:08)
[9] Id.; Exhibit "22" (Interrogatory No. 7); Exhibit "18" (96:01-97:12)
[10] Exhibit "4" (07:06-08:09); 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"
[11] Exhibit "18" (35:17-36:04, 132:01-04);
[12] Exhibit "4" (14:07-14:22); Exhibit "22" No. 1; Exhibit "14" (168:15-169:10)
[13] Exhibit "19" (43:05-43:08);
[14] Exhibit "14" (166:22-168:14)

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

her rights with regard to all employment claims.[15] When Ms. Gill requested Scott Jenkins to provide details as to any alleged violation(s), Mr. Jenkins refused.[16] Ms. Gill was never given or told of the facts, or any evidence, supporting Defendant's decision to terminate her, let alone an opportunity to rebut any allegation of wrongdoing, prior to or at the time of her termination.[17] Plaintiff refused to waive her rights and rejected the severance offer. DIRTT's failure to follow its own procedures, and pretextual reasons for termination give rise to a genuine issue of material fact that age was but a motivating factor and/or the "but for" reason for termination.[18]

### III. ARGUMENT AND AUTHORITIES

A.      **Applicable Legal Standards**

1.      **Summary Judgment Standard**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When the party seeking summary judgment is seeking summary judgment on a claim for which the non-moving party would bear the burden of proving at trial, the party seeking summary judgment bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The party can do this by: (1) submitting summary judgment evidence that negates the existence of a material element of the opposing party's claim, or (2) by showing

---

[15] Exhibit 50
[16] Exhibit "14" (166:22-167:17 and 168:04-168:14)
[17] Id.
[18] Exhibit "4" (15:12-16:07); Exhibit "18" (161:05-164:01)

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

there is no evidence to support an essential element of the opposing party's claim. *Celotex*, 477 U.S. at 322-25. After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

The Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman*, 113 F.3d at 533. The Court must consider "the record taken as a whole" drawing "all reasonable inferences in favor of the nonmoving party" and refrain from making credibility determinations or weighing of the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks  and citations omitted). If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue of material facts is presented, and summary judgment is inappropriate.

**B.      The Burden-Shifting Framework for Age Discrimination Claims**

The *McDonnell Douglas* burden-shifting framework applies to age discrimination claims under both the TCHRA and ADEA. *Reed v. Neopost,* 701 F.3d 44, 440 n.4 (5th Cir. 2012). Under this framework, a plaintiff seeking to prove age discrimination through circumstantial evidence must first establish a prima facie case of age discrimination by showing she was (1) discharged; (2) qualified for the position; (3) within a protected class at the time of discharge; and (4) either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of age. *See Jackson v. Cal-W Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

If the plaintiff satisfies that prima facie burden, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. Id. If the defendant articulates a legitimate, nondiscriminatory reason for the termination, the burden shifts back to

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

plaintiff to show the reason was merely pretext. The TCHRA and ADEA claims are evaluated under the same legal standard except for the third and final "pretext" stage. *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir.2015) ("The third step of the McDonnell Douglas analysis involves a different causation inquiry under the ADEA and the TCHRA."). While the ADEA requires proof that age was the "but for" cause of the adverse employment action at the pretext stage of the analysis, TCHRA only requires proof that age was a "motivating factor" in the decision. *Montalvo v. Aerotek, Inc.*, No. 5:13-CV-997-DAE, 2014 WL 6680421, at *7 (W.D. Tex. 2014). Importantly, although the evidentiary burdens shift back and forth under the McDonnell Douglas framework, the plaintiff bears the "ultimate burden" to show that defendant intentionally discriminated against plaintiff on the basis of age. *Jackson*, 602 F.3d at 378.

## C. Refusal to follow Policies and Pretextual Nature of Reasons Given for Termination

An employer's failure to follow its own policies and procedures when terminating an employee can be construed as evidence of pretext. *Smith v. Xerox Corp.*, 371 Fed. Appx. 514, 517 (5th Cir. Mar. 2010) (failure to follow company policies may prove pretext); *see also Tyler v. Unocal Oil Co. of Cal.*, 304 F.3d 379, 396 (5th Cir. 2002) (altering from usual policies and procedures may in appropriate circumstances support an inference of age discrimination); *see also Sw. Bell Tel. Co. v. Garza*, 58 S.W.3d 214, 229 (Tex. App.—Corpus Christi 2001), *aff'd in part, rev'd as to punitive damages*, 164 S.W.3d 607 (Tex. 2004).

Pretext can further be established through "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence… is likely to support an inference of discrimination even without further evidence of Defendant's true motive." *Haire v. Bd. of Supervisors of La. State Univ.,* 719 F.3d 356, 365 n. 10 (5th Cir. 2013). Evidence of an employer's shifting explanations may be proof of pretext. *Burrell v. Dr. Pepper/Seven Up Bottling Grp, Inc.*, 482 F.3d 408 (5th Cir.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

2007) (shifting explanations can be evidence or pretext); *see also Nasti v. CIBA Specialty Chem. Corp.*, 492 F.3d 589, 594 (5th Cir. 2007) ("A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct."). In addition, pretext may be established through Defendant's inaccurate statements in its EEOC position statement. *Miller v. Raytheon Co.,* 716 F.3d 138 (5th Cir. 2013); *Burton v. Freesclae Semiconductor, Inc.*, 798 F.3d 222, 239-40 (5th Cir. 2015) (erroneous statements in an EEOC position statement may be viewed as circumstantial evidence of discrimination).

DIRTT's failure to investigate highly suspicious circumstances, wherein Ms. Gill strenuously denied allegations made against her, can be further evidence of pretext.[19] *Ion v. Chevron*, 731 F.3d 379 (5th Cir. 2013) (failure to conduct investigation calls into doubt [Defendant's] reasonable reliance and good faith). Instances where DIRTT's upper management failed to investigate complaints and instead give preference to a substantially younger employee include alleged complaints from Ms. McCray, forty-one (41) years old at time of Plaintiff's termination, and can be found in DIRTT's App. 66.[20] Despite Ms. Gill denying the alleged conduct, Defendant's lack of investigation demonstrates disparate treatment on the part of DIRTT and raises genuine issues of material fact as to pretext.[21] *Dixon v. Grande Communs. Networks LLC,* No. MO-13-CV-085, 2015 U.S. Dist. LEXIS 2247, at *14-16 (W.D. Tex. 2015). It is important to note that the Defendant never produced the alleged fraudulent expense claim documentation that termination decision-maker Scott Jenkins testified caused him to distrust Plaintiff, casting further

---

[19] Exhibit "4" (23:25-27:12); Exhibit "11" ¶5; Exhibit "13" ¶4; Exhibit "14" (167:23-168:03); Exhibit "26"
[20] *Id.*
[21] Exhibit "2"; Exhibit "4" (24:18-25:9); Exhibit 11 ¶5; Exhibit "13" ¶4-5; Exhibit "18" (57:01-57:18 & 60:02-61:24); Exhibit "26";

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

doubt on the stated reasons for termination and any good faith basis Mr. Jenkins may have had in any alleged complaints lodged.[22]

Subjective criteria for termination will also evidence pretext for unlawful discrimination. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001) (subjective criteria provides opportunities for unlawful discrimination and will allow an employee to raise a genuine issue of material fact). DIRTT's decision maker in terminating Ms. Gill, Mr. Jenkins, admittedly relied on entirely subjective standards for her termination, though DIRTT represented to the EEOC that there is a formal policy utilized to investigate violations of the DIRTT Code of Conduct.[23]

**D.     DIRTT Investigation Policies**

DIRTT asserts in its motion that it does not follow a formal discipline policy. See Def. Motion pg. 2. This assertion is baseless and misleading. DIRTT's Code of Conduct and Values includes guidelines and procedures to follow when an employee's integrity or perceived actions are not in accordance with the DIRTT Code of Conduct.[24] DIRTT's Integrity Program details the Defendant's formal policies of investigation. Despite these procedures outlining the requirement of an Audit Chair investigation of complaints submitted pursuant to the DIRTT Integrity Program, no complaints against Ms. Gill were ever forwarded to DIRTT's Audit Chair. Despite DIRTT's representation that numerous complaints were submitted in accordance with DIRTT's Integrity Program, no investigation ever took place as required by DIRTT's in accordance with the DIRTT Integrity policy as well as the DIRTT "Our Way of Doing Business" policy.[25]

---

[22] Exhibit "27" No. 12
[23] Exhibit "18" (98:14-99:07); Exhibit "18" (35:17-36:04); Exhibit "4" (14:07-14:22); Exhibit "19" (43:05-43:08); Exhibit "20"; Exhibit "21"; Exhibit "22" No. 1;
[24] Exhibit "20" (pg. 7); Exhibit "21" (pgs. 2-4); Exhibit "27" (Interrogatory No. 3)
[25] Exhibit 19 (65:22-66:02); Exhibit "21" (pgs. 2-4); Exhibit "23" (RFP No. 10); Exhibit "27" (RFP No. 3)

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

In an attempt to obscure the pretextual nature of DIRTT's failure to follow the Integrity Program's investigative requirements (ie: to have the Audit Chair investigate complaints), Defendant's counsel improperly coached termination decision-maker Mr. Jenkins - during his deposition  - on the crux issue of whether DIRTT's Integrity Program's investigative directives were required or optional.[26] While attempting to evade the question as to whether the application of DIRTTs Integrity Program is optional or required, Scott Jenkins, the DIRTT president and termination decision-maker, would not provide a definitive answer and instead equivocated in his responses, eventually stating he would have to ask his Board of Directors who approved the policy and put it in place.[27]  DIRTT's failure to follow its own formal policies of investigation may be construed as evidence of pretext. *Smith v. Xerox Corp.*, 371 Fed. Appx. 514, 517 (5th Cir. Mar. 2010); *see also Tyler v. Unocal Oil Co. of Cal.*, 304 F.3d 379, 396 (5th Cir. 2002) (altering from usual policies and procedures may in appropriate circumstances support an inference of age discrimination); *see also Sw. Bell Tel. Co. v. Garza*, 58 S.W.3d 214, 229 (Tex. App.—Corpus Christi 2001), *aff'd in part, rev'd as to punitive damages*, 164 S.W.3d 607 (Tex. 2004).

DIRTT's formal policies regarding investigative procedures were not followed as Ms. Gill was not made aware of the majority of the alleged complaints or issues utilized in terminating her despite DIRTT's alleged culture for openness and transparency.[28] DIRTT's formal policies include gathering all information from all parties to complaints followed by an investigation of the complaints, and a failure to investigate in such a manner would go against DIRTT's purported desire for inherent fairness.[29] DIRTT's failure to follow its own formal policies of investigating

---

[26] Exhibit "18" (the attempt to secure a straight answer from Mr. Jenkins  is primarily found on pages 137-146, however the entire line of questioning, for context, can be found at 132:16-147:09)
[27] Exhibit "18" (143:20-144:21)
[28] Exhibit "18" (135:19-135:22).
[29] Exhibit "4" (13:18-17:03)

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

complaints by gathering information from all parties (DIRTT did not address the vast majority of the alleged complaints with Plaintiff nor even ask for her side of the story) involved is evidence of pretext.[30] *Unocal Oil Co. of Cal.*, 304 F.3d 379, 396 (5th Cir. 2002); *see also Garza*, 58 S.W.3d 214, 229 (Tex. App.—Corpus Christi 2001), *aff'd in part, rev'd as to punitive damages*, 164 S.W.3d 607 (Tex. 2004).

## E.     DIRTT Inaccurate EEOC Statements

One of the most blatant of the myriad false statements DIRTT made to the EEOC was that DIRTT conducted an investigation leading to Plaintiff's termination, which is in direct contradiction with the evidence.[31] Additional inaccurate statements include reasons for termination such as (1) Ms. Gill failed to communicate system procurement changes; (2) that Plaintiff withheld documents; (3) Plaintiff failed to inform others of required new processes; (4) refusing to respond to project specific inquiries; and (5) that Ms. Gill continued to "intrude" on activities within the Texas market that was no longer hers.[32] These "reasons for termination" further evidence the pretextual nature of Plaintiff's termination as DIRTT has failed to produce **any** documents supporting **any of** these assertions.[33]

## F.     Complaints Regarding Ms. Gill's Alleged Unprofessional Conduct

Defendant alleges Plaintiff engaged in a "pattern of misconduct" that eventually led to her termination. [See Def. Motion pg. 3] Defendant bases this assertion on a pile of e-mails sent between Mr. Jenkins, Ms. Pahl and others that reference, during the two years preceding Ms. Gill's

---

[30] Exhibit "14" (47:18-48:01; 172:16-173:19)

[31] Exhibit "4" (07:06-08-09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:01-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"

[32] Exhibit "25"

[33] Exhibit "34" (No. 13; No. 15; No. 16; No. 17; No. 20)

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

termination, her alleged "tendency to intrude on their local markets, disseminate incorrect information, withhold critical information from other team members, and exclude team members from emails that concerned their industries or markets." *Id.* Defendant's reasons must be considered pre-textual in nature as no investigation was performed regarding the alleged complaints, as is required by DIRTT's formal policy.[34] *Tyler v. Unocal Oil Co. of Cal.*, 304 F.3d 379, 396 (5th Cir. 2002). Not only were the complaints not investigated, most were not even brought to Ms. Gill's attention for rebuttal as per DIRTT policy.[35] *Id.*; *Haire*, 719 F.3d 356, 365 n. 10 (5th Cir. 2013).

### a. Andrea Skinner Complaints

Defendant's base their termination of Ms. Gill in part on complaints created by Ms. Andrea Skinner, now known as Andrea Chickey.[36] Ms. Skinner lodged a complaint with Mr. Jenkins in August of 2013 complaining of Ms. Gill spreading "inaccurate" information without specifying the information that was allegedly "incorrect."[37]  Ms. Gill was not included in Ms. Skinner's e-mail, Plaintiff was never made aware of any such complaint as pursuant to DIRTT's policies and procedures, the complaint was not investigated, and Plaintiff received no discipline during her tenure at DIRTT and she received no discipline for any violation or alleged distribution of inaccurate information.[38]  Despite Ms. Gill endeavoring to include Ms. Skinner on correspondence regarding the Department of Defense Education Agency prior to this e-mail, Ms. Skinner lodged

---

[34] Exhibit "4" (07:06-08-09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"

[35] *Id.*

[36] Exhibit "2"; Exhibit "34" No. 2

[37] Exhibit "24"

[38] Exhibit "20"; Exhibit "21"; Exhibit "18" (69:11-70:2, 96:13-97:12, 216:14-217:02); MS (07:06-08-09, 15:17-17:03, 64:06-64:17, 80:03-80:11); JR (23:05-23:11 & 73:09-73:12).

false complaint against Plaintiff, which could have been easily discovered through investigation assuming Mr. Jenkins had wanted to arrive at the truth.[39] *Haire* 719 F.3d at 365 n. 10.

Ms. Skinner's next complaint concerned a University of Kentucky General Services Administration ("GSA") contract. Ms. Gill's job duties included "provid[ing] updated GSA information to the company.[40] After reviewing the University of Kentucky GSA contract, Ms. Gill noticed several legal and internal concerns that would put the contract in violation of the GSA contract.[41] Miles Nixon addressed Plaintiff's legal concerns with the contract, resulting in praise for Plaintiff's input to ensure DIRTT's contracts met required specifications.[42] Additionally, Plaintiff addressed further issues regarding the GSA discounting, indicating that a "red flag" would arise if other vendors had given better discounts than the GSA discount per GSA contract terms.[43] Andrea Skinner's complaint in Defendants App. 21 is a misrepresentation of the facts. At no point does the record reflect Ms. Gill provided incorrect GSA information. *Haire* 719 F.3d at 365 n. 10.

Ms. Skinner's alleged that Plaintiff 'interfered' with the education industry, more precisely DIRTT's contract with the National Purchasing Partners (NPP), a government contract. Ms. Skinner's complaint seems to derive from Ms. Gill's DIRTT Rep Forecast, wherein Ms. Gill congratulated the DIRTT representatives who were instrumental in securing the NPP contract. Ms. Skinner complained to Mr. Jenkins that Ms. Gill "had nothing to do with the NPP process" despite Ms. Gill being instrumental in securing the NPP contract.[44] The record contains no evidence of Ms. Gill being notified of this complaint or of any investigation of this complaint as required by

---

[39] PG Depo (72:20-74:17); P-PG 2204; P-PG 2196-2197
[40] Exhibit "25"
[41] Exhibit "28"
[42] *Id.*
[43] *Id.*
[44] Exhibit "29"

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

DIRTT policy.[45]

DIRTT contends that Mr. Jenkins called to discuss "recent e-mail" exchanges with Ms. Skinner, Defendant's App. 31, but there is a fact issue as to whether this call ever occurred.[46] Ms. Skinner's complaint in DIRTT's App. 35-37 arises from Ms. Gill's classification of DIRTT's orders to be added to a contract drop down in order to properly adhere to Audit requirements, a subject recognized by DIRTT's Project Manager Jordan Smed (and son to the CEO) that needed hard and fast rules regarding contract classification.[47] This alleged reason for termination is evidence that  termination decision maker Scott Jenkins turned a blind eye to a younger employee bringing false complaints against an older employee to justify a termination, thus giving rise to an inference of age discrimination.[48] Plaintiff's sole intention was to ensure DIRTT's government contracts and orders thereunder were properly labeled, and as is evidenced from the record and Ms. Gill's own testimony regarding her reasons for classification is primarily for audit and not for compensation.[49] The fact that Ms. Gill was not made aware of this alleged complaint, and that the alleged complaint was not investigated as is DIRTT policy, is further evidence of Defendant's discriminatory reasons for termination.

None of Ms. Skinner's alleged complaints evidence any improper tagging of orders in some nefarious scheme to secure commissions to which Ms. Gill was not entitled. DIRTT has produced no evidence that Ms. Gill was working on any non-approved education contracts as Ms. Skinner

---

[45] Exhibit "4" (07:06-08-09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"
[46] Exhibit "14" (80:12-80:17 and 123:12-125:18)
[47] Exhibit "30"; Exhibit "31"
[48] Exhibit "18" (98:14-99:07); Exhibit "18" (35:17-36:04); Exhibit "4" (14:07-14:22); Exhibit "19" (43:05-43:08); Exhibit "20"; Exhibit "21"; Exhibit "22" No. 1
[49] Exhibit "14" (103:24-104:13); Exhibit "31"

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

asserted in Defendant's App. 35. Ms. Gill's sole goal in this correspondence was to adhere to strict audit requirements, not undermine or "back door" her way into commissions as alleged.[50] DIRTT's App. 38 gives no indication of Ms. Gill seeking commissions on projects that were not rightfully hers, further evidencing the falsity of reasons given for termination.[51]

Ms. Skinner's alleged complaint regarding the University of California contract, DIRTT's App. 39-41, is yet another blatantly false reason in an attempt to justify Plaintiff's termination after the fact. DIRTT's upper management had given permission, and had full knowledge, Ms. Gill was working on the University of California contract.[52] Ms. Skinner's complaint, Def. App. 43, provides no reasonable basis that Ms. Gill violated any policies or acted in an unprofessional manner. As discussed above, Ms. Gill was instrumental in negotiating the NPP contract.[53] Ms. Gill was not made aware of this alleged complaint nor was this alleged complaint investigated.[54] There is no evidence in the record indicating Ms. Gill was not allowed to work on the NPP government contract besides Ms. Skinner's baseless accusations - all without supporting documentation.

The San Antonio distribution partner that DIRTT claimed refused to work with Ms. Gill, Workplace Resources, was the result of DIRTT Upper Management communication issue, and **not** due to any alleged dishonesty by Ms. Gill.[55] The Workplace Resources incident happened approximately five (5) years before Ms. Gill's date of termination, well outside the two-year timeframe DIRTT alleges for termination, and well beyond the one-year period termination decision-maker Scott Jenkins claimed he had problems with Ms. Gill.[56] Ms. Gill spoke with

---

[50] Exhibit "14" (80:12-80:17; 103:24-104:13; 123:12-125:18); Exhibit "31";
[51] Exhibit "46"
[52] Exhibit "33"
[53] Exhibit "29"
[54] Exhibit "14" (172:16-173:09)
[55] Exhibit "14" (91:05-92:16)
[56] Exhibit "18" (43:07-15)

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

DIRTT's then CEO Mogens Smed regarding the incident and was told not to worry about it, giving Ms. Gill no chance to rectify Workplace Resources erroneous belief in Ms. Gill's unprofessional behavior.[57] Furthermore, Mr. Jenkins was unable to determine whether Ms. Gill's alleged conduct even violated the DIRTT Company Code of Conduct.[58]

### b. Megan McCray Complaints

Ms. McCray's, now known as Megan McCray-Pantella, complaint in DIRTT's App. 63-65 is baseless and riddled with falsities such that no reasonable belief as to its veracity can be entertained.[59] Ms. McCray alleged Plaintiff miscommunicated system procurement changes, however DIRTT has been unable to produce any evidence of this.[60] Furthermore Ms. McCray alleges Ms. Gill withheld information required to have orders released, again DIRTT can provide no evidence of this allegation.[61] The incident also occurred well outside the temporal scope of the two year termination window Defendant has claimed it relied on.[62] Ms. McCray's complaint found in DIRTT's App. 63-65 is riddled with inaccurate statements, from a substantially younger employee than Ms. Gill that were never investigated nor brought to Plaintiff's attention as is DIRTT policy.[63]

Ms. McCray's allegedly complained that Plaintiff is "telling [her] how to run [her] territory."[64] DIRTT's territory split between Plaintiff and her replacement Pahl occurred on

Page 20

---

[57] Exhibit "14" (91:05-92:16)
[58] Exhibit 18 (35:07-36:04)
[59] Exhibit "2"; Exhibit "34" No. 2
[60] Exhibit "34" No. 13
[61] Exhibit "34" No. 15
[62] *Id.*
[63] Exhibit "4" (07:06-08-09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"
[64] DIRTT's App. 32

approximately December 2, 2014.[65] Ms. Gill's job duties included educating sales representatives, providing training as needed to sales representatives, and providing marketing ideas to sales representatives.[66] Ms. Gill's attempt to educate Ms. McCray on how to properly conduct a site tour so as to avoid unnecessary friction between distribution partners, which was part of Plaintiff's job duties, evidences the disparate treatment Ms. Gill suffered while at DIRTT. *Dixon v. Grande Communs. Networks LLC,* No. MO-13-CV-085, 2015 U.S. Dist. LEXIS 2247, at *14-16 (W.D. Tex. 2015). It should also be noted that Ms. Gill was not included on this email and there was no investigation of these alleged complaints.[67]

Ms. McCray's alleged complaints, included in DIRTT's App. 42, are patently false. Scott Jenkins, acting upon the word of a substantially younger employee and with no further investigation, complained to then CEO Mogens Smed that Ms. Gill was interfering with the Texas A&M University (TAMU) contract. In reality, Ms. Gill was on holiday with her daughter, an alumnus of TAMU 2012, and also a then employee of DIRTT working alongside Megan McCray in a sales report position, when Plaintiff's daughter came across a business opportunity for DIRTT. This business opportunity had no involvement with Plaintiff, and Plaintiff did nothing to indicate interference with the TAMU contract.[68]

Mr. Jenkins' assertion that Ms. Gill wrongly presented in DIRTT employee Dan Flynn's territory is also a baseless allegation. Knoll, Inc., the company which held the Air Force Enterprise Sourcing Group Contract, invited Plaintiff to present at the STRATCOM headquarters. Knoll, Inc.

---

[65] Exhibit "16"
[66] Exhibit "25"
[67] Exhibit "4" (07:06-08:09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"
[68] Exhibit 51 ¶2

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

specifically asked Plaintiff to not include Dan Flynn, whose underwhelming work performance can be ascertained from Mr. Jenkins email in DIRTT's App. 42, in the presentation with a top secret security agency, STRATCOM. Ms. Gill informed Mr. Flynn's bosses in Chicago, Sarah Putman and Chris Mattus, that Ms. Gill would be attending the meeting without Mr. Flynn upon request of contract holder Knoll, Inc.[69]

Defendant's complaint that Plaintiff negotiated a University of California contract with discount percentages "[Mr. Jenkins] had never seen before in [his] life," is also a baseless one.[70] Ms. Gill's work on the University of California was known by upper management, there are no indications of Ms. Gill giving lower or unapproved discounts, and Ms. Gill was commended by the CEO Mogens Smed on securing the University of California contract and then utilizing the contract to secure subsequent business.[71] To then use this as evidence of legitimate reason(s) for termination exposes yet another facet of the pretextual nature of the termination, especially in light of Human Resources Director Mr. Robinson's admission that he never investigated anything regarding Ms. Gill and there is no evidence of any other investigation into the matter.[72]

As stated on Def. Motion pg. 6-7 regarding DIRTT's App. 340-342, the lead Ms. Gill sent to Ms. McCray that DIRTT now relies on to justify termination, was intended for the distribution partner Broussard Group, not Workplace Resources. Ms. Gill's reputation with Broussard Group was stellar and any inclusion of Ms. McCray on a possible lead for the Broussard Group was to encourage sales, as DIRTT's decision maker Mr. Jenkins testifies he expects every DIRTT

Page 22

---

[69] Exhibit 51 ¶3
[70] DIRTT's APP. 42
[71] Exhibit "33"
[72] Exhibit "4" (07:06-08:09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

employee to do.[73] Regarding Ms. McCray's alleged complaint in DIRTT's App.66, as explained above, Ms. Gill strenuously denied the allegations, once brought to her attention by Mr. Smed, and was absolved of any wrongdoing with no discipline of any sort arising from Ms. McCray's false allegations.[74]

DIRTT's App. 105 allegation that Ms. Gill was involved in Kansas, a territory for which she was responsible (west of the Mississippi), the record evidences that this email was never sent to Ms. Gill. HR Director Jason Robinson, nor any other DIRTT employee DIRTT conducted an investigation into the alleged complaint, and the email itself was never forwarded to Scott Jenkins, DIRTT's decision maker, for review or consideration in terminating Ms. Gill.[75] There is no documentation that Ms. Gill was working in Ms. McCray's territory (San Antonio/Austin) as is complained of in DIRTT's App. 105 and App. 112-114.[76] Ms. McCray's "drama is fun" comment evidences the disparate treatment Ms. Gill was receiving by younger employees creating false 'complaints' (drama) in order to discriminate against an older employee Ms. Gill.[77] Furthermore testimony from Mr. Robinson evidences this complaint was never investigated, though he (the HR Director) was included in the e-mail.[78]

### c. Antoinette ("Toni") Pahl Complaints

Ms. Pahl's complaint in DIRTT's App. 45: Ms. Gill was responsible for the highly sensitive GSA audit, and as Ms. Pahl had only been working with the company for less than a month at that time, Ms. Gill was attempting to complete the current audit while giving Ms. Pahl time to train

---

[73] Exhibit "13"; Exhibit "18" (207:12-207:16); Exhibit "22" (No. 1)
[74] Exhibit "4" (23:25-27:12); Exhibit "11" ¶5; Exhibit "13" ¶4; Exhibit "14" (167:23-168:03); Exhibit "26"
[75] "Exhibit 16"; Exhibit "18" (201:23-202:15); Exhibit "19" (23:09-23:11 and 65:22-65:25); Exhibit "22" No. 1; Exhibit "35"
[76] Exhibit "18" (35:17-36:04); Exhibit "4" (14:07-14:22); Exhibit "19" (43:05-43:08); Exhibit "34" No. 20
[77] Def. Exhibit A-33 (APP. 105)
[78] Id.; Exhibit "19" (70:08-71:02); Exhibit "22" No. 1; Exhibit "32"

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

and become familiar with her position.[79] DIRTT's App. 46-47 presents a similar situation where Ms. Pahl complained to Mr. Jenkins that "Pat has really stepped in a bucket this time" for not including Ms. Pahl on correspondence with customer Cazador. Ms. Pahl had been employed by DIRTT for less than a month, had not worked with Ms. Gill prior to this time, and Ms. Gill had been working with the customer Cazador since approximately 2009.[80] DIRTT's App. 48-50; and 50-56 are further evidence of complaints not brought to Ms. Gill's attention nor resulting in any investigation, again contrary to DIRTT policy.[81] DIRTT's App 48 and App. 57 are incidents of Ms. Pahl complaining that she was not included on GSA audit emails – barely a month after Ms. Pahl's employment began. Ms. Gill had not been made aware of her previous complaints, was not made aware of this complaint, nor were any of those complaints investigated as required by DIRTT policy.[82] Ms. Pahl's complaint in DIRTT's App. 55-56, again, was not communicated to Ms. Gill nor investigated as required by DIRTT policy.[83] Finally DIRTT's App. 71 contains false statements that would've been immediately patent had any type of investigation been performed. It is also apparent from this email DIRTT's scramble to gather 'complaints' and falsity of such as evidenced by Ms. Pahl's statements found in DIRTT's App. 71 that Ms. Pahl was "not sure if there is an email to Bethany asking her to remove me from the notices."[84] Ms. Pahl alleged part-time employee Bethany Deleon, who vetted and distributed governmental leads, was asked by Ms. Gill to exclude Ms. Pahl from these leads. Ms. Gill denied the allegation in her deposition.[85] DIRTT

Page 24

---

[79] Exhibit "2"; Exhibit "14" (148:16-149:05).
[80] *Id*.; Exhibit "38"; Exhibit "39" (99:12-110:19); Exhibit "40".
[81] Exhibit "4" (07:06-08:09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"
[82] *Id*.
[83] Exhibit "4" (07:06-08:09; 13:08-17:03; 64:06-64:17); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-216:19); Exhibit "19" (23:09-23:11 and 65:22-65:25); Exhibit "20"; Exhibit "21"; Exhibit "39" (110:20-115:12); Exhibit "41"
[84] Exhibit "18" (96:01-97:12); Exhibit "39" (128:02-129:03);
[85] Exhibit "14" (189:23-191:05)

has failed to adduce any evidence to substantiate this allegation – such as an affidavit from their own employee Bethany DeLeon.

Regarding Ms. Pahl's complaint in DIRTT's App. 72-92, the contract overview is merely in draft format. Ms. Gill sent the draft to DIRTT employees who had corrections or items to review. On this occasion, Ms. Pahl was not one of those employees who had corrections to implement. This is further corroborated by Mr. Nixon's backing of Ms. Gill's decision to not include Ms. Pahl or unnecessary employees on the draft corrections as it would only cause confusion.[86]

DIRTT contends that both Plaintiff and her replacement, Ms. Pahl, both requested the territory split. This is in direct contradiction to the record.[87] As Ms. Gill was being screened from working with Ms. Pahl, Ms. Gill's reaction only shows her professionalism and willingness to work as a cohesive team to increase DIRTT profitability.[88] Furthermore, as evidenced by the email and testimony, Ms. Pahl's complaints were not communicated to Ms. Gill, no investigation was conducted, and Mr. Jenkins's blind acceptance as fact as evidenced by "I don't understand but can guess there is an issue" and other such complaints from a substantially younger employee support the denial of Defendant's summary judgment motion as age discrimination is to be inferred, at this stage, from such pretextual reasons for termination. *Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 398 (6th Cir. 2008) (key inquiry into whether employer holds good faith belief "whether the employer made a reasonably informed and considered decision before taking the complained of action"). Regarding DIRTT's App. 93, there is no evidence in the record to indicate Ms. Gill interfering with Ms. Pahl's eastern territory as described, in fact Ms. Pahl cannot recall any

---

[86] Exhibit "43"
[87] Exhibit "16"
[88] Exhibit "16" at P-PG 000971

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

specifics as to Ms. Gill actually doing this.[89] This e-mail was not shared with Ms. Gill, nor did it result in any investigation or remedial measures against Ms. Gill.[90]

DIRTT further asserts Ms. Gill manipulated Ms. Pahl's email in DIRTT's App. 99-104. This allegation, like DIRTT's App 66 and all the rest, is untrue and unsupported by any evidence. There is nothing apparent from the email of any manipulation and Ms. Pahl testified herself that she made no effort to contact Ms. Gill about the allegation.[91]

### d. Other Employee Complaints

DIRTT's App. 34 is further evidence of alleged complaints not brought to Ms. Gill's attention nor followed up with investigation as is company policy.[92] It is apparent from this email that the parties are not exactly sure of the surrounding circumstances, "I don't know specific timeframes and these may have taken place before we ironed out the details," yet this 'complaint' has being used as a reason for termination while deviating from company policies.[93] Regarding the complaints found in DIRTT's App. 52, the bid in question was very complicated and included several changes which were communicated in a timely manner. Ms. Gill's attention to detail caught errors that otherwise may have put the contract in jeopardy, and she reached out once those errors were recognized.[94] Mr. Jenkins' crude and wholly unprofessional response, as well as the lack of inclusion of Ms. Gill on the correspondence, is indicative of the pretextual nature of termination

Page 26

---

[89] Exhibit "39" (145:11-151:13);

[90] Exhibit "4" (07:06-08-09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"

[91] Exhibit "36" (160:17-163:12); Exhibit "44"; Exhibit "4" (23:25-27:12); Exhibit "11" ¶5; Exhibit "13" ¶4; Exhibit "14" (167:23-168:03); Exhibit "26"

[92] Exhibit "4" (07:06-08-09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "14" (172:16-173:09); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"

[93] *Id*.

[94] Exhibit "36"

in that Mrs. Gill was not allowed to give her side of the story, it was outside the one-year time-frame Scott Jenkins subjectively utilized and was not one the alleged complaints that Jenkins said he relied on to terminate Plaintiff.[95] Regarding DIRTT's App. 67 and App. 68-70, Mr. Flynn's allegations that Ms. Gill brought no value to the meeting or conveyed incorrect information is unsupported by the record. Ms. Gill kept detailed notes and was a valuable participant in the meeting as evidenced by the confusion of other sales representatives.[96] Finally, regarding DIRTT's App. 97-98, this is a clear example of Ms. Gill not being made aware of complaints lodged against her as required by DIRTT policy, and the subsequent credence the termination decision-maker gave the baseless accusations, such as  that Ms. Gill may go "rogue on us" is telling.[97] DIRTT's App. 97 evidences that younger employees were kept in the loop, as opposed to Ms. Gill, on some unfounded notion that she may 'go rogue', as if Plaintiff's performance over the past ten years is not to be considered.

### e. Scott Jenkins Complaints

DIRTT's App. 38-41 gives no indication of Ms. Gill seeking commissions on projects that were not rightfully hers. Contrary to the assertions made, it is evident that Ms. Gill was in fact allowed to assist in procuring and leveraging the University of California contract.[98] Furthermore Ms. Gill responded in detail as to why the marked projects were eligible for commission.[99] It is

Page 27

---

[95] Exhibit "14" (172:16-173:09); Exhibit "36"; Exhibit "18" (43:07-15)
[96] Exhibit "4" (07:06-08:09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "14" (172:16-173:09); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"
[97] Exhibit "4" (07:06-08:09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"
[98] Exhibit "33"
[99] Exhibit "47"

also record evidence that Ms. Gill was never reprimanded while employed at DIRTT.[100]

## G.   Legitimacy of DIRTT's Performance-Based, Non-Discretionary Reasons for Termination

DIRTT claims its termination of Ms. Gill was in response to her "consistent, repeated, performance and professionalism failures, including issues raised in the complaints by DIRTT employees over the course of two years". [Def. Motion p. 9] The "complaints" lodged against Ms. Gill, the vast majority of which were not shared with her, were not investigated in any manner in violation of DIRTT's policy.[101] As a result DIRTT could not have had a good faith belief in the "complaints" as no investigation was performed, thus rendering the complaints mere allegations. *Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 398 (6th Cir. 2008) (whether employer had honest belief is determined by whether employer made a reasonably informed and considered decision before taking the complained-of action). Furthermore DIRTT's failure to follow its own investigation policies, DIRTT's false reasons for termination, subjective criteria for termination, inaccurate statements to the EEOC, and the fact that Mr. Jenkins does not know if Ms. Gill violated the DIRTT Company Code of Conduct and Values will evidence that DIRTT's proffered reasons for termination are merely pretext for unlawful age discrimination.[102]

## H.   Age was the "But-For" Cause of Gill's Termination Under the ADEA

Ms. Gill has met her prima facie case of discrimination: Ms. Gill was discharged, she was qualified for the position as evidenced by her years of service and praise earned for her job performance, Ms. Gill was within a protected class - age fifty-nine at termination, and was replaced

[100] Exhibit "4" (80:09-80:11); Exhibit 18 (216:14-217:02); Exhibit "19" (73:09-73:12).
[101] Exhibit "4" (07:06-08:09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "11" ¶3; Exhibit "12" ¶3-7; Exhibit "13" ¶3; Exhibit "18" (69:11-70:01; 96:13-97:12; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11 and 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"
[102] *Id.*

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

by the substantially younger Ms. Pahl, approximate age forty-nine, not Noble Diller as claimed by DIRTT.[103] *See Jackson v. Cal-W Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). As discussed above, Plaintiff has rebutted each and every allegation Defendant cites for termination and demonstrated evidence of pretext, creating  material issues of fact, to-wit: DIRTT failing to follow its own investigation policies; the falsity of the reasons given for termination; inaccurate statements to the EEOC; and the subjective decision to terminate Ms. Gill.[104] *Unocal Oil Co. of Cal.*, 304 F.3d at 396; *Haire* 719 F.3d at 365 n. 10; *Miller v. Raytheon Co.*, 716 F.3d 138 (5th Cir. 2013); *Ion v. Chevron*, 731 F.3d 379 (5th Cir. 2013); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001). Defendant could not have had an honest good-faith belief in the veracity of the "complaints" by employees as no investigation was performed, thus precluding any reasonably informed decision as to termination. In effect, after Plaintiff refused the severance payment and instead filed a Charge with the EEOC, DIRTT scoured its e-mail archives to gather and stockpile "complaints" in an effort to legitimize its termination after-the-fact.[105] *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008). All of these combine to evidence the pretextual nature of Plaintiff's termination and present material issues of fact to be decided by the trier of fact. *Jones v. R.G. Barry Corp.*, No. 16-cv-154 (RCL), 2017 U.S. Dist. LEXIS 39161, at *14-15 (W.D. Tex. 2017)

## I.     Age was "Motivating Factor" for the Termination of Gill's Employment

Page 29

---

[103] Exhibit "2"; Exhibit "3"; Exhibit "4" (81:07-82:18); Exhibit 5; Exhibit "6"; Exhibit "7"; Exhibit "8"; Exhibit "9"; Exhibit "10"; Exhibit "18" (218:03-218:11); Exhibit "48"
[104] Exhibit "4" (07:06-08-09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "11" ¶3; Exhibit "12" ¶3-7; Exhibit "13" ¶3; Exhibit "18" (35:17-36:04; 69:11-70:01; 96:13-99:07; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11; 43:05-43:08; 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"
[105] Exhibit "49"

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF

Ms. Gill has met her burden, under the TCHRA, that age was a motivating factor in her termination by evidencing the proffered reasons for termination are unworthy of credence. *Kokes v. Angelina Coll.*, 148 S.W.3d 384, 393 (Tex. App—Beaumont 2004, no pet.). Ms. Gill has rebutted and proved the falsity of each and every allegation DIRTT has offered as reason for termination as discussed above. DIRTT's failure to follow its own policies and procedures when terminating Ms. Gill will evidence pretext of age being a motivating factor in the termination of Plaintiff. *Tyler v. Unocal Oil Co. of Cal.*, 304 F.3d 379, 396 (5th Cir. 2002) (altering from usual policies and procedures may in appropriate circumstances support an inference of age discrimination). As discussed above the decision to terminate Ms. Gill was left to Mr. Jenkins.[106] Plaintiff has demonstrated age was a motivating factor in Mr. Jenkins decision to terminate Mrs. Gill by his compilation of false reports, with no investigation as is DIRTT's policy, in which he could have no good faith belief in as his decision was not reasonably informed and entirely subjective.[107] *Kokes* 148 S.W.3d at 393; *Unocal Oil Co. of Cal.*, 304 F.3d at 396; *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001).

## V. CONCLUSION AND PRAYER

Plaintiff has produced more than sufficient evidence of her *prima facie case*, and has established voluminous evidence of DIRTT's mendacity and conflicting material statements that support a denial of Defendant's Motion for Summary Judgment.

WHEREFORE for the foregoing reasons, Plaintiff prays this Honorable Court deny Defendant's Motion for Summary Judgment, in all things, and set this case for jury trial.

Page 30

---

[106] Exhibit "4" (14:19-14:22); Exhibit "19" (43:05-43:08); Exhibit "22" No. 1
[107] Exhibit "4" (07:06-08:09; 13:08-17:03; 47:06-48:01; 64:06-64:17; 80:09-80:11); Exhibit "11" ¶3; Exhibit "12" ¶3-7; Exhibit "13" ¶3; Exhibit "18" (35:17-36:04; 69:11-70:01; 96:13-99:07; 161:06-164:01; 216:14-217:02); Exhibit "19" (23:09-23:11; 43:05-43:08; 65:22-65:25; 73:09-73:12); Exhibit "20"; Exhibit "21"